**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, ss.	Superior Court Trial Department
	Civil Action No. _____

|  |  |
|---|---|
| SIFREDO SOLA, and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| CLEANNET USA, INC. and CLEANNET OF NEW ENGLAND, INC., ) ) ) | |
| Defendants. ) ) | |

11-1267 BLC

RECEIVED
MAR 31 2011
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. This is a class action brought on behalf of individuals who have performed cleaning services for Defendants CleanNet USA, Inc. and CleanNet of New England, Inc. (collectively "CleanNet"). The above-named Plaintiff and other similarly situated individuals have been subjected to a number of systemic violations of law in their relations with CleanNet as described herein.

2. CleanNet has misclassified the individuals who perform cleaning services as independent contractors, when they are actually employees entitled to the protections of the wage laws (including timely payment of all wages, minimum wage, and overtime pay), as well as other benefits of employment, such as eligibility for unemployment and workers' compensation. Also in violation of the wage laws,

CleanNet has required payments from cleaning workers in exchange for cleaning work and has taken numerous improper deductions from cleaning workers' wages.

3. Moreover, in violation of the common law, CleanNet has engaged in numerous misrepresentations and omissions of material facts in its relationships with its cleaning workers.

4. In this action, the above-named Plaintiffs seek to recover, on their own behalves and on behalf of all similarly situated individuals, compensation for these violations, trebling of statutory damages, interest, and attorneys' fees and costs, and any other relief that the Court deems appropriate.

## II. PARTIES

5. Plaintiff Sifredo Sola is an adult resident of East Boston, Massachusetts, who performed cleaning services for CleanNet from approximately August 2005 to January 2010.

6. This is a class action that the above-named Plaintiff brings on his own behalf and on behalf of all others similarly situated, namely all other individuals who have performed cleaning services for CleanNet in Massachusetts and have been subjected to the legal violations described in this complaint. Upon information and belief, more than two-thirds of the members of the class are citizens of Massachusetts. The class meets all of the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

7. Defendant CleanNet USA, Inc. is a commercial cleaning company that operates in Massachusetts and in other locations throughout the United States. Its principal place of business is in Columbia, Maryland. By its own activities and those

performed through its agent CleanNet of New England, Inc., CleanNet USA, Inc. has subjected itself to jurisdiction in Massachusetts.

8.   Defendant CleanNet of New England, Inc. is an affiliate of CleanNet USA, Inc.. CleanNet of New England, Inc. is a Massachusetts corporation and is therefore a citizen of Massachusetts  On information and belief, CleanNet of New England, Inc. acts as the agent of CleanNet USA, Inc., exists solely to conduct its business, and/or has no independent corporate existence. By its own activities and those of CleanNet USA, Inc., CleanNet of New England, Inc. has subjected itself to jurisdiction in Massachusetts.

### III. STATEMENT OF FACTS

#### A. CleanNet's Unfair and Deceptive Business Practices

9.   CleanNet purports to offer cleaning "franchises" to individuals, pursuant to which the individuals enter into cleaning franchise agreements with CleanNet and pay thousands of dollars to CleanNet.

10.  In exchange, CleanNet provides these individuals with the opportunity to perform janitorial cleaning work to CleanNet's clients.

11.  CleanNet has control over the relationship between these cleaning "franchisees" and CleanNet's clients: it chooses which cleaning accounts to offer to which cleaning "franchisee"; it determines the prices for the cleaning services; it can and does remove cleaning accounts from franchisees without any notice and without any opportunity to cure perceived defects in performance; it bills the cleaning accounts and takes deductions from the cleaning "franchisees'" pay, etc.

12. CleanNet's contract with its cleaning "franchisees" is a standard-form franchise agreement establishing the terms of the relationship between the parties.

13. None of the individuals is able to negotiate for different terms and conditions from those appearing in the standard-form franchise agreement provided by CleanNet.

14. Upon information and belief, CleanNet targets individuals with limited fluency in English because they are easily victimized by CleanNet's misrepresentations and other systemic legal violations, as described herein. These individuals are primarily non-English-speaking immigrants.

15. CleanNet's representatives knowingly and intentionally misrepresent terms of the relationship between CleanNet and its cleaning "franchisees" to induce individuals to sign those agreements.

16. CleanNet's misrepresentations include both affirmative misrepresentations and omissions of material fact.

17. CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that they are buying a lucrative business, when in fact they are buying the right to become CleanNet's low-paid janitorial cleaning workers.

18. CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that they will have a guaranteed customer base, when in fact CleanNet only guarantees cleaning accounts for a maximum of 180 days and has numerous hidden contingencies as to whether and when cleaning accounts will be replaced.

19. Cleaning franchisees frequently do not actually receive the amount in monthly business that has been promised by CleanNet or receive the promised monthly business only for a very short time.

20. CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that they have control over which cleaning accounts to accept and that cleaning accounts will be offered in locations that are convenient to the cleaning franchisees and at times of day when the cleaning franchisees are able to service the cleaning accounts, when in fact CleanNet routinely offers cleaning franchisees cleaning accounts that they know the franchisees are unable to accept and/or pressure franchisees into accepting cleaning accounts that they do not want to accept.

21. For example, cleaning franchisees are often offered cleaning accounts that are geographically inconvenient, that are too large for them to service or are too small to be worth the time taken to travel to the cleaning account.

22. Cleaning franchisees are also often offered cleaning accounts that are poorly priced, so that the amount of time it would take to complete the job as compared to the amount earned does not make it worth it to accept the account. Often, these cleaning accounts pay less than minimum wage.

23. CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that the guaranteed customer base will be offered to them within a few months after they start work, but there are in fact numerous hidden contingencies that allow CleanNet to extend out the time to offer cleaning accounts for several additional months (and sometimes indefinitely).

24.     CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that they will earn substantial monthly revenues from their cleaning accounts and does not properly explain that, if a cleaning account does not pay CleanNet, CleanNet may deduct from the franchisees' pay for the amounts advanced for work performed for those cleaning accounts. This may result in franchisees earning minimal amounts (or even having negative balances) for a full month of work.

25.     CleanNet, through its agents and its marketing materials, represents to potential cleaning "franchisees" that the cleaning franchise is an opportunity to have a successful, long-term business, and the term of the franchise agreement is twenty years.

26.     Upon information and belief, CleanNet's cleaning "franchisees" typically retain cleaning accounts for less time than it would take them to earn back their initial investments in the cleaning "franchise."

27.     However, CleanNet does not disclose that fact to potential cleaning "franchisees."

28.     CleanNet requires cleaning franchisees to purchase general liability and workers' compensation insurance, as well as other insurance, and encourages/ pressures franchisees to purchase that insurance through CleanNet.

29.     CleanNet does not disclose or explain that it may earn a substantial profit from the sale of insurance, and it does not disclose or explain that the levels of insurance that it requires cleaning franchisees to carry would be nearly impossible for

the franchisees to purchase independently, so most franchisees have no real choice but to purchase the insurance through CleanNet.

30. CleanNet does not pay cleaning franchisees in a timely manner for work.

31. Instead, cleaning franchisees receive payment at the end of the month following the month in which the work was performed, and, when the customer does not pay, franchisees may not be paid for several additional months (or at times not at all).

32. CleanNet encourages cleaning franchisees to purchase cleaning supplies through CleanNet and represents that CleanNet is able to offer cleaning supplies at much cheaper prices than other alternatives because it buys in bulk from the suppliers.

33. In fact, CleanNet's prices for cleaning supplies are typically much higher than the alternatives.

34. CleanNet claims that it will give cleaning franchisees substantial advance notice and an opportunity to correct alleged defects in performance prior to removing cleaning accounts.

35. In fact, cleaning accounts are frequently taken away without any advance notice and/or opportunity to cure perceived defects.

36. After taking the account away from the individual, CleanNet then can offer the account to another individual who has signed a franchise agreement to count toward that person's monthly guarantee.

37. CleanNet claims that it will give cleaning franchisees opportunity to grow their business.

38. However, the primary way for cleaning franchisees to grow their businesses is to purchase additional business from CleanNet for substantial amounts of money.

39. CleanNet provides no guarantee for the amount of time that additional cleaning accounts will be retained, and they may be removed from the franchisees even before they have made back their initial investment.

40. CleanNet deducts excessive fees from cleaning franchisees' pay for their cleaning work, including a 15% royalty and management fee, deductions for insurance, payments on promissory notes and interest, payments for additional business, deductions for cleaning supplies, etc.

41. CleanNet does not permit cleaning "franchisees" to perform commercial cleaning work for any customer unless that customer signs a contract with CleanNet and is billed through CleanNet and royalty and management fees are taken out of cleaning franchisees' pay.

42. CleanNet can unilaterally cancel the contract with the cleaning franchisees for any one of many reasons delineated in the contract, but the cleaning franchisees are not permitted to cancel their contract with CleanNet (which has a twenty-year term) for any reason.

**B. CleanNet's Misclassification of Its Cleaning Workers as Independent Contractors**

43. CleanNet purports to classify its cleaning "franchisees" as independent contractors.

44. In fact, CleanNet's cleaning "franchisees" are in fact employees, as they do not meet the definition of independent contractors as set forth in Mass. Gen. L. c. 149 § 148B.

45. The cleaning "franchisees" perform services within CleanNet's usual course of business, which is to provide cleaning services to customers.

46. In addition, the behavioral and financial control manifested over these cleaning "franchisees" by CleanNet demonstrates that the workers are employees rather than independent contractors.

47. CleanNet instructs the cleaning workers in how to do their work and dictates their performance of the details of their jobs.

48. The cleaning "franchisees" generally do not work in an independently established trade, occupation, profession, or business.

49. Instead, as required by the noncompetition provisions in CleanNet's adhesion contract, the cleaning "franchisees" perform cleaning services exclusively for CleanNet's clients.

50. Also, the cleaning "franchisees" do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not invested in an independent business apart from their payment of "franchise" fees to CleanNet.

51. Because of their misclassification by CleanNet as independent contractors, these cleaning "franchisees" have not received the benefits that inure from the employment relationship under law, including, *e.g.*, timely payment of full wages for

all hours worked, no improper deductions from pay, not having to pay for work or the expenses of running a business, etc.

52. Numerous and excessive deductions are made from cleaning "franchisees'" pay, which constitute improper deductions from wages.

53. For example, CleanNet deducts payments towards "franchise fees," interest payments, payments for CleanNet to manage the workers' cleaning accounts, insurance, and other payments.

54. Cleaning "franchisees" do not receive pay for their time spent traveling between different accounts during the work day.

55. Because of the misclassification, CleanNet's cleaning "franchisees" do not receive unemployment when they lose their jobs, nor do they receive workers' compensation benefits when they are injured on the job.

56. CleanNet has failed to comply with Massachusetts law regarding workers' compensation insurance by, *inter alia*, failing to carry workers' compensation coverage for its cleaning "franchisees," instead requiring the cleaning "franchisees" to purchase their own workers' compensation-like coverage (which they are encouraged to purchase through CleanNet and on which CleanNet may make an undisclosed profit), and failing to compensate cleaning "franchisees" for work-related injuries for which they would be entitled to workers' compensation benefits.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

57. Pursuant to the state law requirements as set forth in Massachusetts General Law Chapter 149 § 150, Plaintiff Sifredo Sola filed his statutory wage claims

with the Office of the Attorney General and has received a right to sue letter in order to proceed on these claims in court.

## COUNT I

### (Violation of Massachusetts Independent Contractor Law)

Defendants' misclassification of their cleaning workers as independent contractors instead of employees violates Mass. Gen. Laws c. 149 § 148B. This claim is asserted pursuant to Mass. Gen. Laws c. 149 § 150.

## COUNT II

### (Wage Law Violations)

Defendants' misclassification of their cleaning workers as independent contractors has deprived them of the protections of the Massachusetts wage laws, including guaranteed minimum wage, overtime pay, and timely payment of all wages owed without improper deductions from pay, in violation of Mass. Gen. L. c. 151 § 1, and Mass. Gen. L. c. §§ 1A and 1B, and Mass. Gen. L. c. 149 §§ 148, 148B, and 150.

## COUNT III

### (Misrepresentation)

Defendants have committed intentional and/or negligent misrepresentation in its representations and material omissions to the plaintiffs and class members, as described above, in violation of the common law of Massachusetts.

## COUNT IV

### (Breach of Contract)

Defendants have breached their written contracts with the plaintiffs and class members, as described above, in violation of the common law of Massachusetts.

## COUNT V

### (Rescission of Contract)

The written contracts between Defendants and the plaintiffs and class members are unenforceable as they contain numerous provisions that are unfair, unconscionable, against public policy, and should be rescinded (in whole or in part) under the common law of Massachusetts.

## COUNT VI

### (Unjust Enrichment/Quantum Meruit)

Through the conduct described above, Defendants have been unjustly enriched under the common law of Massachusetts. The plaintiffs and class members have been deprived by Defendants of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of Massachusetts.

## JURY DEMAND

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Certification of this case as a class action;

2. Injunctive relief, requiring Defendants to cease their illegal practices;

3. Restitution for all wages and other employment-related benefits that are owed to plaintiffs and class members as described above;

4. Recovery of all payments made by the plaintiffs and class members to Defendants;

5. Reimbursement for cleaning accounts not provided to the plaintiffs and class members;

6. Rescission of the written contracts between Defendants and the plaintiffs and class members, in whole or in part;

7. Recovery under the theory of quantum meruit;

8. All other damages to which the plaintiffs and class members may be entitled under the above-referenced statutes and common law;

9. Statutory trebling of all wage-related damages; and

10. Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

SIFREDO SOLA,

and all others similarly situated,
Plaintiffs,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated:   March 30, 2011