## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

Superior Court Trial Department
Civil Action No. 2011-1267-BLS

---

SIFREDO SOLA, and all others
similarly situated,

                 Plaintiffs,

        v.

CLEANNET USA, INC. and
PAUL OLIVEIRA,

                 Defendants.

        JURY DEMANDED

)
)
)
)
)
)
)
)
)
)
)
)
)

---

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

1.    This is a class action brought on behalf of individuals who have performed cleaning services for Defendant CleanNet USA, Inc. ("CleanNet"). The above-named Plaintiff and other similarly situated individuals have been subjected to a number of systemic violations of law in their relations with CleanNet as described herein.

2.    CleanNet has misclassified the individuals who perform cleaning services as independent contractors, when they are actually employees entitled to the protections of the wage laws (including timely payment of all wages, minimum wage, and overtime pay), as well as other benefits of employment, such as eligibility for unemployment and workers' compensation. Also in violation of the wage laws, CleanNet has required payments from cleaning workers in exchange for cleaning work and has taken numerous improper deductions from cleaning workers' wages.

3.     Moreover, in violation of unfair and deceptive business practices laws and the common law, CleanNet has engaged in numerous misrepresentations and omissions of material facts in its relationships with its cleaning workers.

4.     In this action, the above-named Plaintiff seeks to recover, on his own behalf and on behalf of all similarly situated individuals, compensation for these violations, trebling of statutory damages, interest, and attorneys' fees and costs, and any other relief that the Court deems appropriate.

II.     **PARTIES**

5.     Plaintiff Sifredo Sola is an adult resident of East Boston, Massachusetts, who performed cleaning services for CleanNet from approximately August 2005 to January 2010.

6.     This is a class action that the above-named Plaintiff brings on his own behalf and on behalf of all others similarly situated, namely all other individuals who have performed cleaning services for CleanNet in Massachusetts and have been subjected to the legal violations described in this complaint. Upon information and belief, more than two-thirds of the members of the class are citizens of Massachusetts. The class meets all of the class certification requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

7.     Defendant CleanNet USA, Inc. is a commercial cleaning company that operates in Massachusetts and in other locations throughout the United States. Its principal place of business is in Columbia, Maryland. By its own activities and those performed through its agent CleanNet of New England, Inc., CleanNet USA, Inc. has subjected itself to jurisdiction in Massachusetts.

8. Defendant Paul Oliveira is an adult resident of Massachusetts. He is the President and Owner of CleanNet of New England, Inc., an agent of CleanNet USA, Inc., who manages CleanNet workers in Massachusetts. He is responsible for the management of CleanNet of New England, including reassignment of customer accounts, and overseeing CleanNet of New England's billing of customers, issuance of monthly checks to cleaning workers, and development/sales of so-called franchises.

## III. STATEMENT OF FACTS

### A. CleanNet's Unfair and Deceptive Business Practices

9. CleanNet purports to offer cleaning "franchises" to individuals, pursuant to which the individuals enter into cleaning franchise agreements with CleanNet and pay thousands of dollars to CleanNet.

10. In exchange, CleanNet provides these individuals (called "franchisees" by CleanNet; hereinafter referred to as "cleaning workers") with the opportunity to perform janitorial cleaning work for CleanNet's clients.

11. CleanNet purports to have developed a specialized system relating to the establishment, development and operation of its franchises. Through this system, CleanNet controls the type of cleaning equipment and supplies that cleaning workers use, the types of specialized commercial cleaning services that cleaning workers may provide, methods of operations, as well as centralized billing, bookkeeping and accounting methods. CleanNet maintains the right to change, improve or further develop any of the components of its "system."

12. CleanNet has control over the relationship between cleaning workers and CleanNet's clients: it chooses which cleaning accounts to offer to which cleaning

worker; it determines the prices for the cleaning services; it can and does remove cleaning accounts from workers without any notice and without any opportunity to cure perceived defects in performance; it bills the cleaning accounts and takes deductions from the cleaning workers' pay, etc.

13.     The contract between CleanNet's agent, CleanNet of New England, Inc., and the cleaning workers is a standard-form franchise agreement establishing the terms of the relationship between the parties.

14.     None of the individuals is able to negotiate for different terms and conditions from those appearing in the standard-form franchise agreement provided by CleanNet.

15.     Upon information and belief, CleanNet targets individuals with limited fluency in English because they are easily victimized by CleanNet's misrepresentations and other systemic legal violations, as described herein. These individuals are primarily non-English-speaking immigrants.

16.     CleanNet's representatives and agents knowingly and intentionally misrepresent terms of the relationship between CleanNet and its cleaning workers to induce individuals to sign those agreements.

17.     CleanNet's misrepresentations include both affirmative misrepresentations and omissions of material fact.

18.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that they are buying a lucrative business, when in fact they are buying the right to become CleanNet's low-paid janitorial cleaning workers.

19.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that they will have a guaranteed customer base, when in fact CleanNet only guarantees cleaning accounts for a maximum of 180 days and has numerous hidden contingencies as to whether and when cleaning accounts will be replaced.

20.     Cleaning workers frequently do not actually receive the amount in monthly business that has been promised by CleanNet or receive the promised monthly business only for a very short time.

21.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that they have control over which cleaning accounts to accept and that cleaning accounts will be offered in locations that are convenient to the cleaning workers and at times of day when the cleaning workers are able to service the cleaning accounts, when in fact CleanNet routinely offers cleaning workers cleaning accounts that they know the workers are unable to accept and/or pressure workers into accepting cleaning accounts that they do not want to accept.

22.     For example, cleaning workers are often offered cleaning accounts that are geographically inconvenient, that are too large for them to service or are too small to be worth the time taken to travel to the cleaning account.

23.     Cleaning workers are also often offered cleaning accounts that are poorly priced, so that the amount of time it would take to complete the job as compared to the amount earned does not make it worth it to accept the account.  Often, these cleaning accounts pay less than minimum wage.

24.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that the guaranteed customer base will be offered to them within a few months after they start work, but there are in fact numerous hidden contingencies that allow CleanNet to extend out the time to offer cleaning accounts for several additional months (and sometimes indefinitely).

25.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that they will earn substantial monthly revenues from their cleaning accounts and does not properly explain that, if a cleaning account does not pay CleanNet, CleanNet may deduct from the workers' pay for the amounts CleanNet purports to "advance" for work performed for those cleaning accounts. Thus, CleanNet has a policy of "charging back" for work that cleaning workers perform, but which clients fail to pay for. This "chargeback" policy may result in workers earning minimal amounts (or even having negative balances) for a full month of work.

26.     CleanNet, through its agents and its marketing materials, represents to potential cleaning workers that the cleaning franchise is an opportunity to have a successful, long-term business, and the term of the franchise agreement is twenty years.

27.     Upon information and belief, CleanNet's cleaning workers typically retain cleaning accounts for less time than it would take them to earn back their initial investments in the cleaning "franchise."

28.     However, CleanNet does not disclose that fact to potential cleaning workers.

29.     CleanNet requires cleaning workers to purchase general liability and workers' compensation insurance, as well as other insurance, and encourages/ pressures cleaning workers to purchase that insurance through CleanNet.  The insurance that CleanNet requires workers to purchase is intended to alleviate the liability of CleanNet, not the cleaning workers.

30.     CleanNet does not disclose or explain that it may earn a substantial profit from the sale of insurance, and it does not disclose or explain that the levels of insurance that it requires cleaning workers to carry would be nearly impossible for the cleaning workers to purchase independently, so most workers have no real choice but to purchase the insurance through CleanNet.

31.     CleanNet does not pay cleaning workers in a timely manner for work.

32.     Instead, cleaning workers receive payment at the end of the month following the month in which the work was performed, and, when the customer does not pay, cleaning workers may not be paid for several additional months (or at times not at all).

33.     CleanNet encourages cleaning workers to purchase cleaning supplies through CleanNet and represents that CleanNet is able to offer cleaning supplies at much cheaper prices than other alternatives because it buys in bulk from the suppliers.

34.     In fact, CleanNet's prices for cleaning supplies are typically much higher than the alternatives.

35.     CleanNet claims that it will give cleaning workers substantial advance notice and an opportunity to correct alleged defects in performance prior to removing cleaning accounts.

36.   In fact, cleaning accounts are frequently taken away without any advance notice and/or opportunity to cure perceived defects.

37.   After taking the account away from the individual, CleanNet then can offer the account to another individual who has signed a franchise agreement to count toward that person's monthly guarantee.

38.   CleanNet claims that it will give cleaning workers opportunity to grow their business.

39.   However, the primary way for cleaning workers to grow their businesses is to purchase additional business from CleanNet for substantial amounts of money.

40.   CleanNet provides no guarantee for the amount of time that additional cleaning accounts will be retained, and they may be removed from the worker even before they have made back their initial investment.

41.   CleanNet deducts excessive fees from cleaning workers' pay for their cleaning work, including a 15% royalty and management fee, deductions for insurance, payments on promissory notes and interest, payments for additional business, deductions for cleaning supplies, etc.

42.   CleanNet does not permit cleaning workers to perform commercial cleaning work for any customer unless that customer signs a contract with CleanNet and is billed through CleanNet and royalty and management fees are taken out of cleaning workers' pay.

43.   CleanNet can unilaterally cancel the contract with the cleaning workers for any one of many reasons delineated in the contract, but the cleaning workers are not

permitted to cancel their contract with CleanNet (which has a twenty-year term) for any reason.

**B.    CleanNet's Misclassification of Its Cleaning Workers as Independent Contractors**

44.    CleanNet purports to classify its cleaning workers as independent contractors.

45.    However, CleanNet's cleaning workers are in fact employees, as they do not meet the definition of independent contractors as set forth in Mass. Gen. L. c. 149 § 148B.

46.    The cleaning workers perform services within CleanNet's usual course of business, which is to provide cleaning services to customers.

47.    In addition, the behavioral and financial control manifested over these cleaning workers by CleanNet demonstrates that the workers are employees rather than independent contractors.

48.    CleanNet instructs the cleaning workers in how to do their work and dictates their performance of the details of their jobs.

49.    The cleaning workers generally do not work in an independently established trade, occupation, profession, or business.

50.    Instead, as required by the noncompetition provisions in CleanNet's adhesion contract, the cleaning workers perform cleaning services exclusively for CleanNet's clients.

51.    Also, the cleaning workers do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not

invested in an independent business apart from their payment of "franchise" fees to CleanNet.

52.     Because of their misclassification by CleanNet as independent contractors, these cleaning workers have not received the benefits that inure from the employment relationship under law, including, *e.g.*, timely payment of full wages for all hours worked, no improper deductions from pay, not having to pay for work or the expenses of running a business, etc.

53.     Workers are charged thousands of dollars in franchise fees, interest payments, and additional business fees for the right to perform work for CleanNet, and these fees are impermissible under the wage laws.

54.     Numerous and excessive deductions are made from cleaning workers' pay, which constitute improper deductions from wages.

55.     For example, deductions are made from cleaning workers' pay for insurance, including general liability insurance and workers' compensation insurance .

56.     In addition, when a CleanNet customer does not pay its bills, the workers who performed the cleaning work for that customer are charged back for the customer's unpaid bills even though the workers performed their work. This categorization of cleaning workers' wages as "advances" for cleaning work already completed by cleaning workers, but not yet paid for by clients, violates the "special contracts" provision of the Wage Act. The deductions made under this scheme are a means for CleanNet to recapture wages already earned and paid, and as such they constitute improper deductions under the Wage Act.

57.     CleanNet also deducts payments for CleanNet to manage the workers' cleaning accounts and other payments.

58.     Cleaning workers do not receive pay for their time spent traveling between different accounts during the work day.

59.     Because of the misclassification, CleanNet's cleaning workers do not receive unemployment when they lose their jobs, nor do they receive workers' compensation benefits when they are injured on the job.

60.     CleanNet has failed to comply with Massachusetts law regarding workers' compensation insurance by, *inter alia*, failing to carry workers' compensation coverage for its cleaning workers, instead requiring the cleaning workers to purchase their own workers' compensation-like coverage (which they are encouraged to purchase through CleanNet and on which CleanNet may make an undisclosed profit), and failing to compensate cleaning workers for work-related injuries for which they would be entitled to workers' compensation benefits.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

61.     Pursuant to the state law requirements as set forth in Massachusetts General Law Chapter 149 § 150, Plaintiff Sifredo Sola filed his statutory wage claims with the Office of the Attorney General and has received a right to sue letter in order to proceed on these claims in court.

62.     Pursuant to Mass. Gen. L. c. 93A §9, Plaintiff provided Defendants with a thirty-day demand letter relating to their statutory unfair and deceptive business practices claims.

## COUNT I

### (Violation of Massachusetts Independent Contractor Law)

Defendants' misclassification of their cleaning workers as independent contractors instead of employees violates Mass. Gen. Laws c. 149 § 148B. This claim is asserted pursuant to Mass. Gen. Laws c. 149 § 150.

## COUNT II

### (Wage Law Violations)

Defendants' misclassification of cleaning workers as independent contractors has deprived them of the protections of the Massachusetts wage laws, including timely payment of all wages, no improper deductions from pay or other unlawful special contracts, guaranteed minimum wage, and overtime pay. This conduct is in violation of Mass. Gen. L. c. 149 §§ 148, 148B, and 150, Mass. Gen. L. c. 151 § 1, and Mass. Gen. L. c. §§ 1A and 1B.

## COUNT III

### (Unfair and Deceptive Business Practices)

Defendants' conduct in inducing the plaintiffs and class members to purchase purported cleaning "franchises" and its conduct with respect to the plaintiffs and class members in the course of, and following, their performing cleaning services as described above constitutes unfair and deceptive practices in violation of Massachusetts Gen. L. c. 93A.

## COUNT IV

### (Misrepresentation)

Defendants have committed intentional and/or negligent misrepresentation in its representations and material omissions to the plaintiffs and class members, as described above, in violation of the common law of Massachusetts.

## COUNT V

### (Breach of Contract)

Defendants have breached their written contracts with the plaintiffs and class members, as described above, in violation of the common law of Massachusetts.

## COUNT VI

### (Rescission of Contract)

The written contracts between Defendants and the plaintiffs and class members are unenforceable as they contain numerous provisions that are unfair, unconscionable, against public policy, and should be rescinded (in whole or in part) under the common law of Massachusetts.

## COUNT VII

### (Unjust Enrichment/Quantum Meruit)

Through the conduct described above, Defendants have been unjustly enriched under the common law of Massachusetts.   The plaintiffs and class members have been deprived by Defendants of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of Massachusetts.

13

## JURY DEMAND

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.  Certification of this case as a class action;

2.  Injunctive relief, requiring Defendants to cease their illegal practices;

3.  Restitution for all wages and other employment-related benefits that are owed to plaintiffs and class members as described above;

4.  Recovery of all payments made by the plaintiffs and class members to Defendants;

5.  Reimbursement for cleaning accounts not provided to the plaintiffs and class members;

6.  Rescission of the written contracts between Defendants and the plaintiffs and class members, in whole or in part;

7.  Recovery under the theory of quantum meruit;

8.  All other damages to which the plaintiffs and class members may be entitled under the above-referenced statutes and common law;

9.  Statutory trebling of all wage-related damages and all damages attributable to Defendants' unfair and deceptive practices; and

10.  Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

SIFREDO SOLA,

and all others similarly situated,
Plaintiffs,

By their attorneys,

Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
Claret Vargas, BBO#679565
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800
Email:  sliss@llrlaw.com; hschwab@llrlaw.com

Dated:       December 5, 2011


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on counsel for the defendants via first class mail on December 5, 2011.

Shannon Liss-Riordan, Esq.