UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIFREDO SOLA and all others similarly situated, )<br><br>Plaintiffs )<br><br>v. )<br><br>CLEANNET USA, INC., et al., )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 1:12-cv-10580-JLT |

## MEMORANDUM IN OPPOSITION TO MOTION FOR
## LEAVE TO AMEND COMPLAINT

Defendant CleanNet USA, Inc., ("CNUSA"), through counsel, submits this Memorandum in Opposition to Plaintiff Sifredo Sola's motion for leave to file a Second Amended Complaint ("SAC"). The SAC seeks to add a new party plaintiff, Luam Gebrehiwot, and a second putative class of plaintiffs, none of whom has any disclosed contact with Massachusetts or any contract with CNUSA. The motion should be denied as futile for lack of personal jurisdiction, inability to join an indispensable party, and *forum non conveniens*.

## I.    BACKGROUND

Defendant CNUSA is a national franchisor of commercial cleaning franchises. Declaration of Mark Salek ("Salek Decl."), ¶5 (filed herewith). In a number of territories, including Massachusetts and the San Diego, California metropolitan area, CNUSA has entered into master franchise relationships with so-called "area operators." Salek Decl., ¶¶5 and 9; Declaration of Tony Sabahi ("Sabahi Decl."), ¶¶8 and 9 (filed herewith). An area operator is licensed by CNUSA to sell unit franchises in the territory designated in the Area Operator Agreement. Salek Decl., ¶5. The area operator in Massachusetts (prior to its filing for bankruptcy) was LP&D, Inc., d/b/a CleanNet of New England ("LP&D"). Salek Decl., ¶9. In the San Diego area, the area operator is Paqnet, Inc., d/b/a CleanNet of San Diego ("Paqnet").

Salek Decl., ¶13; Sabahi Decl., ¶¶8 and 9.  The two area operators are independently-owned corporations.  They have no affiliation with each other; each is a licensee of CNUSA, and neither corporation is owned or controlled in any manner by CNUSA.  Salek Decl., ¶¶5-9; Sabahi Decl., ¶¶8 and 9.

CNUSA is a Virginia corporation.  Salek Decl., ¶1.  It has no offices or employees, no property, and no bank accounts in the Commonwealth of Massachusetts.  Salek Decl., ¶6.  Other than its relationship with LP&D, CNUSA has no contacts with Massachusetts.  Salek Decl., ¶¶7 and 9.  CNUSA does not interact or contract directly with any customers, franchisees or individuals in Massachusetts.  Salek Decl., ¶7.

Paqnet has no contacts whatsoever with the Commonwealth of Massachusetts:  neither bank accounts, registered agent, telephone listing, mailing address, place of business, nor any employees, contractors, agents or representatives.  Sabahi Decl., ¶31.  The relationship between CNUSA and Paqnet is strictly contractual.  Sabahi Decl., ¶8.  They have an agreement pursuant to which CNUSA has licensed Paqnet to sell CleanNet commercial cleaning franchises in the San Diego, California, area using the "CleanNet" brand and program.  Salek Decl., ¶5; Sabahi Decl., ¶8.

There is no franchise agreement between Luam Gebrehiwot and CNUSA despite the strong implication to the contrary in the proposed SAC.  Salek Decl., ¶11; Sabahi Decl., ¶12.  Gebrehiwot and Akebret Berhe jointly entered into a franchise relationship with Paqnet, not CNUSA, on August 23, 2008 in San Diego, California.  Sabahi Decl., ¶¶13 and 14.  That relationship is evidenced by a written franchise agreement between Gebrehiwot and Berhe as franchisees and Paqnet as franchisor.  Sabahi Decl., ¶13.

The franchise agreement underpins all of Gebrehiwot's claims in the SAC.  That agreement requires that any disputes arising out of the franchise relationship be subject to direct negotiation, mediation, and ultimately binding arbitration through and under the rules of the American Arbitration Association.  Sabahi Decl., ¶¶20-22 and Exhibit 1 to Sabahi Decl.  Further, any related court proceedings must take place in San Diego.  Sabahi Decl., ¶22 and Exhibit 1 to

- 2 -

Sabahi Decl.  The necessary witnesses, documents and other evidence related to claims under the Paqnet franchise agreements would be in California, not in Massachusetts.  Sabahi Decl., ¶24.

CNUSA submits that the Court should deny the Motion for Leave to Amend because (a) there is no personal jurisdiction over CNUSA on Gebrehiwot's claims; (b) an indispensable party, Paqnet, cannot be joined; and (c) Massachusetts is a demonstrably inconvenient forum, and Gebrehiwot's claims are currently being addressed in a convenient and contractually mandated forum before the AAA in San Diego.  Additional cogent facts are referenced in the argument below.

## II.    ARGUMENT

### A.    CNUSA Is Not Subject to Personal Jurisdiction in Massachusetts For Plaintiff Gebrehiwot's Claim.

Plaintiff Sola bears the burden of establishing that this Court may exercise personal jurisdiction over nonresident CNUSA.  *Lockebridge, LLC v. RGMS Media, Inc.*, 2012 U.S. Dist. LEXIS 86504, *2 (D. Mass. June 22, 2012).  In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.  *Id.* at 12-13, *quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks and citation omitted).    An exercise of personal jurisdiction must be both authorized by Massachusetts state law, and compliant with the Constitution.  *See Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).   Two types of personal jurisdiction over a non-resident defendant are recognized: specific and general.  *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010).  Here, neither exists.

### 1.    Specific Personal Jurisdiction Cannot Be Exercised Over CNUSA.

Specific jurisdiction exists only when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and quotations omitted).  Here, Gebrehiwot alleges absolutely no activity by CNUSA in Massachusetts related to her claims, nor could she.  Gebrehiwot has

- 3 -

not dealt with CNUSA in Massachusetts or anywhere else. She purchased a franchise package from an independent third party, Paqnet, in California. *See* Sabahi Decl. at ¶¶ 1-2, 13-14. Because Gebrehiwot's claims—made entirely under California law[1]—do not relate to any Massachusetts-based conduct, this Court does not have specific jurisdiction over CNUSA.

### 2.   General Personal Jurisdiction Cannot Be Exercised Over CNUSA.

#### a.   General Jurisdiction Is Not Authorized By Statute.

When claims do not arise out of a defendant's conduct in Massachusetts and specific jurisdiction is absent, general jurisdiction may be asserted under Mass. Gen. Laws ch. 223, §38, which permits service of process on a foreign corporation that is engaged in or soliciting business in the commonwealth, permanently or temporarily. *See Buckeye Assocs., LTD. V. FILA Sports, Inc., et al.*, 616 F. Supp. 1484, 1491 (D. Mass. 1985). This statute may be invoked, however, only if the foreign corporation's activities have a substantial impact on Massachusetts commerce. *Id.* Put differently, jurisdiction is proper under Section 38 only when the foreign corporation's conduct closely approximates the "regular conduct of a domestic corporation" such that the company is "clearly doing business" in Massachusetts. *Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707, 709 (1st Cir. 1966). CNUSA has engaged in no acts that approximate those of a domestic Massachusetts corporation. Indeed, it has no offices or employees, owns no property, and holds no bank accounts in Massachusetts. *See* Salek Decl. at ¶6. CNUSA's only contact with Massachusetts is that it entered into a contract with LP&D, through which LP&D was given the right to sell franchises under license from CNUSA.[2] CNUSA does not contract or interact directly with any franchisees or individuals in Massachusetts. *Id.* at ¶7. Moreover, LP&D is solely and independently responsible for its own business, free from CNUSA. In exchange for the right to sell "CleanNet" franchises, LP&D

---

[1] Gebrehiwot seeks to add claims under the California Labor Code, California Business and Professions Code, California Corporations Code, California Civil Code, and California common law to plaintiff Sola's claims under Massachusetts law.

[2] Again, Gebrehiwot did not purchase her franchise from LP&D, but rather, the independent California corporation, Paqnet.

contracted to make royalty or other payments to CNUSA.[3]  *Id.* at ¶9.  The contract with LP&D is CNUSA's single contact with Massachusetts, and it is insufficient to confer jurisdiction under Section 38.  *Compare Howse v. Zimmer Manuf. Co.*, 757 F.2d 448, 453 (1st Cir. 1985) (Section 38 conferred general jurisdiction over foreign corporation that sold a significant volume of products in Massachusetts through its Massachusetts representative, and where its employee representatives were "constantly in and out of Massachusetts to deal directly with customers" to develop new and specific-needs products).

### b. General Jurisdiction Is Not Authorized By The Constitution.

Even if Section 38 conferred jurisdiction over CNUSA, exercising general jurisdiction over CNUSA would not comport with the Constitution.  The Due Process Clause imposes three requirements on the exercise of general jurisdiction over non-resident defendants: (1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances.  *Cossaboon*, 600 F.3d at 32.  CNUSA has insufficient contacts with Massachusetts to permit this Court to exercise general jurisdiction over it.

Where general, rather than specific, jurisdiction is at issue, the standard to establish sufficient contacts is more stringent; a defendant must engage in "continuous and systematic pursuit of general business activities in the forum state."  *Id.*  (internal citations and quotations omitted).  The defendant must "be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general *in personam* jurisdiction."

---

[3] On these facts, Sola can make no argument that CNUSA is effectively doing business in Massachusetts by exercising control over LP&D.  Sola may argue that CNUSA is subject to jurisdiction in the Commonwealth because it is, in fact, Sola's employer.  Whether CNUSA is Sola's employer for purposes of the Massachusetts Wage Act is the ultimate issue in Sola's case.  To exercise jurisdiction over CNUSA to hear Gebrehiwot's claims would not only be premature prior to a finding on the merits of Sola's claims, but also would be unnecessary where, as here, Gebrehiwot has a proper and convenient forum in California, where both she and Paqnet, the company whose conduct is at issue, reside.  Further, even if Sola were to prevail in the argument that CNUSA is his employer, it does not necessarily follow that the Court would have general jurisdiction over CNUSA and Gebrehiwot's claims.  *See, e.g., Fiske v. Sandvik Mining and Construction USA*, 540 F.Supp. 2d. 250, 257-258 (D. Mass. 2008) (collecting cases).

*Id.* (internal citations and quotations omitted).  As discussed above, CNUSA is engaged in no such activities.  The First Circuit has found foreign corporations with more significant contacts than CNUSA's not to be subject to a forum state's general jurisdiction.  *See, e.g. United Electrical, Radio, and Machine Workers of America v. Pleasant Street Corp., et al,.* 960 F.2d 1080, 1088 (D. Mass. 1992) (finding foreign corporation's contacts "manifestly insufficient" although it owned the company whose conduct was at issue, appointed its directors (using its own board members in that capacity), paid its employees, and directed the management of its finances); *Harlow*, 432 F.3d at 64-65 (Children's Hospital of Boston not subject to general jurisdiction in Maine despite the facts that it markets to physicians in Maine, treats Maine residents, and receives payments from Maine Medicaid).

Because CNUSA's contacts with Massachusetts do not meet the stringent standard for the exercise of general jurisdiction, Massachusetts cannot constitutionally exercise general jurisdiction over it.

### B.      Sola's Motion for Leave to Add a California Plaintiff Cannot Overcome His Inability to Join Paqnet, An Indispensable Party-Defendant

Sola frames his motion as a routine request to amend under the "liberal amendment policy" of Fed. R. Civ. P. 15(a)(2).  Far from being routine, his proposed amendment seeks to join another plaintiff-franchisee, Gebrehiwot, from another state doing business with another company entirely.  The claims are governed by another state's laws.  Indeed, the proposed amended pleading neglects (to put it charitably) to mention Gebrehiwot's franchisor, Paqnet – the only entity with which Gebrehiwot had a contractual and business relationship.  Sola's coyness before this Court cannot mask Paqnet's status, using the traditional shorthand, as both a necessary and indispensable party for the just adjudication of Gebrehiwot's claims.

Fed. R. Civ. P. 19 does not permit Gebrehiwot's joinder as a plaintiff in this action – much less as a putative representative of a class of California franchisees too numerous to join, all purportedly with claims under California statutory and common law.  Granting Sola leave to file the SAC would be futile under Fed. R. Civ. P. 15(a)(2) because, once added to the case,

- 6 -

Gebrehiwot's claims would be subject to dismissal under Fed. R. Civ. P 19(b).

### 1.     Rule 19 Precludes the Proposed Amendment.

The First Circuit has described Rule 19 in the following way:

> Rule 19 addresses circumstances in which a lawsuit is proceeding
> without particular parties whose interests are central to the suit.  It
> provides for the joinder of such "necessary" parties when feasible.
> Fed.R.Civ.P. 19(a).  It then provides for the dismissal of suits when
> the court determines that the joinder of the "necessary" parties is
> not feasible, but that they are, nonetheless, so "indispensable" that
> the suit must not be litigated without them.

*Picciotto v. Continental Casualty Co.*, 512 F.3d 9, 15 (1st Cir. 2008).  In *Picciotto*, the panel

emphasized the practical nature of the judgments that the district courts are called upon to make

in applying both Rules 19(a) and (b).  "Like Rule 19(b), Rule 19(a) requires the trial court to

make pragmatic judgments and to 'decide whether considerations of efficiency and fairness,

growing out of the particular circumstances of the case, require that a particular person be joined

as a party.'" *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989)

(footnote omitted); *Picciotto*, 512 F.3d at 14-15 & n 8.  Application of Rule 19's tests under the

guidelines developed by the First Circuit yields the unmistakable conclusion that Paqnet would

be both a necessary and an indispensable party to the Gebrehiwot claims under California law

that Sola proposes to join to this Massachusetts action.

Under these guidelines, Paqnet – as the party that contracted with Gebrehiwot – is

required to be joined if feasible as a necessary party under Rule 19(a)(1).  "As a general

statement, it is well established that a party to a contract which is the subject of the litigation is

considered a 'necessary party'." *Blacksmith Investments, LLC v. Cives Steel Co., Inc.*, 228

F.R.D. 66, 74 (D. Mass. 2005) (internal quotations omitted); *Plymouth Yongle Tape v. Plymouth

Rubber Co.*, 683 F.Supp.2d 102 (D. Mass 2009).  *See Acton Co., Inc. of Massachusetts v.

Bachman Funds, Inc.*, 668 F. 2d 76 (1st Cir. 1982).  As another judge of this District recently

observed: "The First Circuit has affirmed that all parties to a contract must be joined, at least in

the case of joint obligees (those to whom a duty is owed)." *Downing v. Globe Direct, LLC*, 806

- 7 -

F.Supp.2d 461, 466 (D. Mass. 2011), *aff'd*, 682 F.3d 18 (1st Cir. 2012).

In his motion, Sola has attempted to mask the central importance of the franchise agreement between Paqnet and Gebrehiwot. Indeed, the proposed SAC, which adds claims about supposedly unlawful franchise relationships in California, never refers either to Gebrehiwot's franchise agreement or to Paqnet – requiring CNUSA to advise the Court that Gebrehiwot's franchisor is Paqnet, and not CNUSA as Sola's SAC falsely implies. The Declarations of Tony Sabahi, President of Paqnet and Mark Salek, President of CNUSA, establish that the franchise agreement between Paqnet and Gebrehiwot (relevant portions of which are annexed to the Sabahi Declaration) is the source of all of the California claims that Gebrehiwot wishes to assert in the SAC. Sabahi Decl. at ¶18. Thus, in applying the Rule 19(a) factors to the facts of this case to determine whether Paqnet is "required to be joined if feasible," Paqnet's status, by contract, as Gebrehiwot's franchisor is a strong indicator that it would be a necessary party to any action that arises from that relationship and the agreement that defines it. *See Downing v. Globe Direct, LLC, supra*.

**a.** **Application of Rule 19(a) Factors**

**(1)** **Complete Relief Could Not be Awarded on Gebrehiwot's Claims if Paqnet Were Not a Party**

The proposed pleading makes claims under the franchise agreement between Gebrehiwot and Paqnet and under California common law standards differentiating between employees and independent contractors. The source of the independent contractor classification for Gebrehiwot and the other San Diego area franchisees of Paqnet is the franchise agreement that Gebrehiwot and the other franchisees entered into with Paqnet. CNUSA played no role in determining or instructing how the franchisees should be classified. Not only does the proposed SAC revolve around the franchise agreement that Paqnet signed and administers, but it also seeks relief, including injunctive relief, to have effect on Paqnet in California. It further requests reimbursement and restitution, which would require major modifications to the franchise agreements between Paqnet and Gebrehiwot, not to mention those of all of the other franchisees

- 8 -

in San Diego that Gebrehiwot purportedly represents.  Such relief would not be possible unless Paqnet were to be made a party.

Although satisfaction of Rule 19(a)(1) is sufficient to establish Paqnet as a "party to be joined if feasible," Paqnet also satisfies the alternative standard to be deemed a necessary party under Rule 19(a)(2).

> **(2)     Paqnet's Ability to Protect Its Interests Would Be Impaired Were It Not a Party to Gebrehiwot's Proposed Action**

Rule 19(a)(2)(ii) also deems to be necessary parties those whose ability to protect their interests would, from a practical standpoint, be impaired if they were not a party to the action at issue.  Gebrehiwot's proposed claims, if successful, would convert franchisees into employees of Paqnet.[4]  Not only would that result in monetary awards to Paqnet's prevailing franchisees for which Paqnet could be ultimately liable under the indemnification provisions of its Area Operator agreement with CNUSA, but it also would saddle Paqnet with expensive continuing obligations as the employer of all of its franchisees going forward, including myriad employer-paid taxes (FICA, FUTA and state employment taxes) and premiums for workers compensation and unemployment benefits.  Thus, there is no serious question that Paqnet's absence as a party to the proposed action by Gebrehiwot, especially in a representative capacity, would impair Paqnet's ability to protect its interests .

Because Paqnet is required to be joined if feasible under Rule 19(a), the analysis should next proceed to determining whether joinder of Paqnet is feasible in this action.  It is not.

> **b.     Paqnet Cannot be Joined as this Court Lacks Specific and General Personal Jurisdiction Over It**

It is well established that under "Rule 19 . . . a court must dismiss a civil action if it lacks personal jurisdiction over any 'necessary' and 'indispensable' party." *Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005), *cited for related proposition in Iantosca v.*

---

[4] Viewing the matter practically, this would be the case notwithstanding the disingenuous efforts of Sola and Gebrehiwot to ignore the franchise agreements and the franchisors with which they contracted.

*Step Plan Services, Inc.*, 604 F.3d 24, 32 (1st Cir. 2010). Consistent with the discussion above demonstrating the lack of personal jurisdiction over CleanNet USA, this Court likewise lacks personal jurisdiction over Paqnet.

Paqnet is a California corporation, which has a business relationship with CNUSA that licenses it to sell CleanNet commercial cleaning franchises to franchisees in and around San Diego, California. Sabahi Decl., ¶¶7, 8. Paqnet is CNUSA's Area Operator in the San Diego area. Salek Decl., ¶ 13. Paqnet's President, Tony Sabahi, personally sold a franchise to franchisees Gebrehiwot and Akebret Behre, who executed a written franchise agreement in San Diego on August 23, 2008. (Sabahi Decl. at ¶¶13, 14.) Not only are the relationship and all of the transactions between Gebrehiwot and Paqnet/Paqnet centered in the San Diego, California area, but Paqnet also lacks any contacts with the Commonwealth of Massachusetts: it is not registered to do business nor does it have a registered agent in Massachusetts; it does not have a bank account, telephone listing or mailing address in Massachusetts; it has no franchisees or employees doing business in or reporting a residence in Massachusetts. And, neither Paqnet nor any of its franchisees solicits customers in Massachusetts, nor may franchisees in San Diego solicit commercial cleaning customers in Massachusetts. Sabahi Decl., ¶31.

Clearly no specific personal jurisdiction exists over Paqnet in this case. As with her claims against CNUSA, Gebrehiwot alleges absolutely no activity by Paqnet in Massachusetts related to her claims, nor could she as Paqnet is not engaged in activity in Massachusetts; "[a]ll of [its] activities are confined to the San Diego, California, metropolitan area." Sabahi Decl. ¶31. Because Gebrehiwot's claims, made under California law, do not and cannot relate to any Massachusetts-based conduct, this Court does not have specific jurisdiction over them. *United States v. Swiss Am. Bank, Ltd., supra*, 274 F.3d at 618.

The Court likewise does not have general jurisdiction over Paqnet. As noted earlier, general jurisdiction over a foreign corporation may be asserted under Mass. Gen. Laws ch. 223, §38, but only if the foreign corporation's activities have a substantial impact on Massachusetts commerce. *Buckeye Assocs., LTD. V. FILA Sports, Inc., et al., supra*, 616 F. Supp. at 1491. This

- 10 -

requires the foreign corporation's activities to resemble the "regular conduct of a domestic corporation" that is "clearly doing business" in Massachusetts.  *Caso v. Lafayette Radio Electronics Corp., supra*, 370 F.2d at 709.    Paqnet, however, conducts no activities in Massachusetts whatsoever.  Sabahi Decl. ¶31.  There is no contact with Massachusetts upon which to base the exercise of general jurisdiction over Paqnet.[5]

> ### c.     Practical Application of Rule 19(b) Requires in Equity and Good Conscience that Paqnet be Found Indispensable to Gebrehiwot's Proposed Action, Precluding the Grant of Leave to Amend

The final inquiry under Rule 19 is whether Paqnet would be, in the traditional parlance, an indispensable party were Sola's request to join Gebrehiwot's California claims granted.  This involves assessment of the facts using the Rule 19(b) factors, along with any "other considerations . . . as long as they are relevant to the question of whether to proceed 'in equity and good conscience' [with the action in the absence of the necessary party]."  *B. Hernandez & v. Kellogg USA, Inc.*, 516 F.3d 18, 23 (1st Cir. 2008), *quoting In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1359 (Fed. Cir. 1999).  "In the end, the indispensability analysis involves 'the balancing of competing interests' and 'must be steeped in pragmatic considerations.'"  *In re Olympic Mills Corp.*, 477 F.3d 1, 9 (1st Cir. 2007), *citing Travelers Indemn. Co. v. Dingwell*, 884 F.2d 629, 635 (1st Cir. 1989).  *B. Hernandez & Hnoz v. Kellogg USA, supra*, 516 F.3d at 23.  Ultimately, however, "the question of whether a suit must be dismissed[6] due to the absence of an indispensable party is one of equity, not one that calls into question our subject matter jurisdiction."  *Downing v. Globe Direct LLC*, 682 F.3d 18, 22 & n. 6 *citing Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005).

Examining the first Rule 19(b) factor, there would be significant prejudice to Paqnet if

---

[5] While it is unimaginable that an argument suggesting that general jurisdiction over Paqnet could exist under §38, much less a finding that the statutory requirements are satisfied, we incorporate by reference the argument that Massachusetts could not constitutionally exercise general jurisdiction over CNUSA as by definition precluding the exercise of personal jurisdiction over Paqnet.

[6] Here, of course, because the question of whether Paqnet is an indispensable party arises in adjudicating a motion for leave to amend, the issue is whether to grant leave when to do so would create an indispensable party: Paqnet.

A/75140423.2

the amendment were allowed in Paqnet's absence.  Gebrehiwot's claims and those of the putative class unmistakably arise under the franchise agreement and are directed squarely at Paqnet, although neither the agreement nor Paqnet is mentioned in Sola's papers or the SAC. CNUSA has neither a contract nor any other form of relationship with Gebrehiwot or any other San Diego franchisee.  Salek Decl. ¶¶ 11-13; Sabahi Decl. ¶¶6, 8-9, 12.  Instead of suing Paqnet in California and despite no relationship with CNUSA, Gebrehiwot nonetheless seeks to append her claims to Sola's action in this Court, 3,000 miles away from her business and those of her putative class members, in a jurisdiction where she cannot even sue her and the putative class's franchisor, and where the courts are unfamiliar with the California statutes specifically governing franchises[7] and employment,[8] and apply a statutory independent contractor standard with different and more rigid standards than California's common law standard.  *S.G. Borello & Sons v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989)[9]

When faced with analogous efforts to indirectly attack - through an affiliate - the contractual rights of persons or entities that procedurally cannot themselves be joined in an action brought against the related party, courts have applied the practical reasoning and pragmatism that Rule 19 explicitly invites to cut through the formalities, determine what is really going on and identify whose interests are really at stake.  *See, e.g., B. Fernandez & Hnos, Inc. v.*

---

[7] *E.g.,* California *Franchise Relations Act, Cal. Bus. & Prof. Code*, §§20,000**,** *et seq.***;** *California Franchise Investments Law, California Corporations Code, Div. 5*, §§*29560-29567.*

[8] The proposed SAC avers multiple violations of the California Labor Code, including §§ 203,226, 450, 221, 2802, 510, 1182.11-1182.13, 1194, 1197, and 1198.

[9] While we cannot speculate over why Gebrehiwot has chosen to sue the national franchisor in Massachusetts over matters arising under her California franchise agreement with her Area Operator that is not subject to the personal jurisdiction of this Court, we note that efforts in which Sola's counsel has been involved in a failed effort under California law to hold a similar national franchisor of commercial cleaning businesses directly liable for purported misclassification of franchisees under their agreements with a regional operator.  *See Juarez v. Jani-King of California, Inc.,* 2012 WL 177564 (N.D. Cal. Jan. 23, 2012), petition for permission to appeal denied, No. 12-80028 (9th Cir. May 15, 2012), dismissing the plaintiffs' argument that the national franchisor exercised sufficient control to be deemed the franchisees' employer, the federal court relied on the distinctive character of a franchise.  The *Juarez* court found that the national company's controls "were no more than necessary to protect Jani-King's trademark, trade name, and good will and accordingly, did not create an employer-employee relationship between Jani-King and Plaintiffs." *Id.* at *5.  While Gebrehiwot might be leading her putative class to Massachusetts in a misguided attempt to escape the fatal impact of *Juarez* on her claim against a deeper pocketed defendant than Paqnet in CNUSA, that case would remain binding on her claims directly against national franchisor CNUSA under California law.

*Kellogg USA, Inc., supra*, 516 F.3d 18, 26-27 (where non-diverse subsidiary not named in complaint was alleged to have played a significant role in wrongdoing for which diverse parent alone was sued in federal court, First Circuit panel found that inasmuch as the subsidiary was "a central player. . . in the alleged breach, the practical course here, as it was in *H.D. Corp. [of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 993 (1st Cir. 1986)] is to proceed in a forum where the absentee may be joined." On this reasoning the court affirmed the finding that the non-diverse subsidiary was indispensable, and thus also affirmed the dismissal of the action); *H.D. Corp. of Puerto Rico v. Ford Motor Co., supra* (in action based on diversity jurisdiction, non-diverse parent corporation of diverse subsidiary that was sued in federal court was found indispensable, prompting dismissal of the lawsuit, where the parent was the signatory to the agreements at issue in the litigation and the claims in reality were directed primarily against it rather than the subsidiary).

Sola and Gebrehiwot have deliberately excluded their franchisor, Paqnet, from party status in a lawsuit arising from the franchise agreement and Paqnet's interests connected with that agreement. Under the case law of this Circuit, the first Rule 19(b) factor, the risk of prejudice to Paqnet from a judgment in its absence on the issues raised in the proposed SAC, is palpable. This factor tilts overwhelmingly in favor of not adding Gebrehiwot's claims, especially as it is Paqnet's interests as a party to the franchise agreement that are truly at risk.

The second Rule 19(b) factor is whether protective measures exist that could mitigate the risk of prejudice. In this case, there is no meaningful way for the Court to avoid prejudice to Paqnet. As in *Picciotto v. Continental Can Co., supra*, 512 F.3d at 18 and *Downing v. Globe Direct, supra*, 806 F.Supp.2d at 469, "it would be difficult if not impossible . . . to shape relief that would not implicate [Paqnet's] interests." *See Picciotto, supra*, 512 F.3d at 18 (internal quotations omitted). Gebrehiwot demands judicial orders to change Paqnet's business and cost structures in an unjustifiable and unsustainable manner under California law, and impose huge penalties and monetary compensation for its current and past treatment of its franchisees in the manner that was commercially agreed to by the parties and approved by the regulators in

- 13 -

California.  There simply are no protective measures that effectively would mitigate Paqnet's risks if excluded as a party.

The third factor under Rule 19(b) is whether judgment in the absence of the necessary party would be adequate.  The meaning of this factor was explained by the U.S. Supreme Court as transcending the relief that could be awarded to the parties and extending as well "to the interests of the courts and the public in complete, consistent, and efficient settlement of controversies."  *Provident Tradesmens Bank & Trust Co. v. Patterson, supra*, 360 U.S. at 111; *Picciotto v. Continental Casualty Co., supra*, 512 F.3d at 18.  The franchise agreement ignored by Gebrehiwot already provides an agreed-upon process for the complete, consistent and efficient settlement of controversies: mandatory dispute resolution, including both mediation and, if necessary, binding arbitration.  Sabahi Decl., Exh. 1, §XXII.  The parties agreed that if mediation of a dispute fails, resolution must be by arbitration of *single-claimant disputes only*[10] through the American Arbitration Association (AAA) and under its Commercial Rules, to take place the AAA offices closest to Paqnet's offices in San Diego.[11]  It is important to note that the California forum requirement is a statutory mandate.  See California Franchise Relations Act, Cal. Bus. & Prof. Code, §§ 20000, *et seq.*  Specifically, the Act, at §20040, expressly permits a California franchisor and franchisee to agree at any time to binding arbitration, so long as the substantive legal standards prescribed by that law are followed by the arbitrator, and the arbitrator is selected from a list supplied by the AAA or a similar organization.  Moreover, at §20040.5 the Act voids any dispute resolution requirement "restricting venue to a forum outside this state . . ." which, in effect, limits the forum to a California location unless the parties agree to the contrary.[12]

---

[10] This is in effect a class action waiver, lawful under *AT&T Mobility LLC v. Concepcion,* 563 U.S. ___, 131 S. Ct. 1740 (2011).

[11] Exceptions to these terms are provided, largely for the benefit of the franchisee, when the parties jointly agree.

[12] It seems clear that, at least in part, Sola's motion for leave to amend to add Gebrehiwot's claims for himself and a putative class of other Paqnet franchisees is a subterfuge to avoid the dispute resolution provisions of their franchise agreements.

This third Rule 19(b) factor also weighs heavily in favor of considering Paqnet a party without which Gebrehiwot's action should not proceed, requiring denial of Sola's pending motion for leave to amend.

As a final factor under Rule 19(b), courts are directed to consider whether dismissal of an action for failure to join an indispensable party would leave the existing or remaining parties without an adequate remedy. Here, nothing could be further from the case. To the contrary, as discussed above, by deeming Paqnet indispensable to the action proposed by Gebrehiwot, the Court in fact would be restoring the remedies and the process that the parties agreed to in their commercial franchise agreement. The First Circuit has found the availability of an action in state court having jurisdiction over the parties, including the party found indispensable to adjudication of a federal action dismissed as a result, to satisfy this factor. *B. Fernandez & Hnoz v. Kellogg USA, Inc., supra*, 516 F.3d at 23. The fact that Gebrehiwot, Paqnet and all of the franchisees Gebrehiwot claims to represent agreed to the dispute resolution process and remedies which they would remain free to pursue if Sola's motion for leave to amend were denied presents an even more compelling rationale for finding that the fourth Rule 19(b) factor favors Paqnet's status as an indispensable party to Gebrehiwot's proposed claims.

In sum, application of this Circuit's Rule 19(a) and (b) factors yields a clear conclusion: Paqnet would be an indispensable party to the SAC if leave to amend were granted. This conclusion compels the denial of the motion.

## C.     The Proposed Amendment Should be Rejected Under the Doctrine of Forum Non Conveniens.

CNUSA submits that the addition of proposed Plaintiff Grebrehiwot and the putative California class of Paqnet franchisees is improper on personal jurisdiction and indispensable party non-joinder grounds. However, there is an additional compelling reason to deny the motion for leave to amend, and that reason is that this Court is a manifestly inappropriate, inconvenient, and unnecessary forum to hear the case. Moreover, there is a manifestly appropriate, convenient, and necessary forum in San Diego. For the reasons discussed below,

the Court should deny the motion on the basis of *forum non conveniens*.

**1.      Massachusetts is an Inconvenient Forum.**

The issue of whether to dismiss (or, as here, not to entertain in the first place) a case, on inconvenient forum grounds, is a discretionary matter for this Court.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (*forum non conveniens* determination is committed to the sound discretion of the trial court).

This Court's assessment of the relative benefits and detriments of the competing forums is to be guided by the following maxim from the Supreme Court:  a plaintiff  should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff s convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.  *Koster v. Lumbermens Mut. Co.*, 330 U.S. 518, 524 (1947).

The Supreme Court has laid out the interests to be considered by this Court:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . .  There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the cases, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 at 508-09 (1947) (footnote omitted).

A federal court has discretion to dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and  . . . trial in the chosen forum would establish . . .  oppressiveness and vexation to a defendant . . .  out of all proportion to plaintiff's convenience, or . . .  the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."  *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981), in turn quoting *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947)).

- 16 -

In the present motion, every significant factor tips in favor of excluding Gebrehiwot's claims from Sola's action on the basis of *forum non conveniens*.  Gebrehiwot's "home court" is in San Diego, California, not Boston, Massachusetts.  Moreover, Massachusetts is not CleanNet USA's "home court".  It is distant and inconvenient for both named parties.  California law, which applies to Gebrehiwot's franchise agreement, demands that any claims arising from her franchise agreement be subject to the laws, jurisdiction and venue of California.  Gebrehiwot's claims arising out of her franchise agreement with Paqnet are covered by a mandatory dispute resolution clause, which requires adjudication of the disputes in California.  Sabahi Decl. at ¶21.  Under that clause, Paqnet has already commenced proceedings with the American Arbitration Association in California.  Sabahi Decl. at ¶28.  Thus, any parallel proceedings before this Court against CNUSA would result in unnecessary duplication of effort, as well as the prospect of inconsistent rulings.  Paqnet is an indispensable party to this case, and it cannot be joined as personal jurisdiction is lacking.  On a related theme, Paqnet's legitimate interests, as a party to the Gebrehiwot franchise agreement, will be impacted by the Court's exercise of jurisdiction in the case.  Massachusetts has no genuine interest in deciding Gebrehiwot's claim, whereas the State of California would have reason to want such claims to be adjudicated there.  On the practical side, CNUSA cannot be assured that it will be able to secure the appearance of necessary witnesses in Massachusetts to defend itself against putative California class members' claims.  This practical concern goes to the fundamental unfairness of permitting the Gebrehiwot claims to be litigated in Massachusetts.  It favors California as the forum.  Similarly, the expense to the parties of trying a San Diego contract case in Massachusetts is unreasonable, vexatious, and harassing.  This is particularly true where, as here, Gebrehiwot's claims will all be governed by California law, not Massachusetts law.  Not only are the laws of those states different, but they are also in a state of flux, and it makes no sense for this Court to interpret the laws of California for a California plaintiff and class.  The Motion for Leave to Amend should be denied in favor of the available and appropriate California forum.

> **2.    The California AAA Proceedings Are the Preferred – and Contractually Mandated – Forum for Gebrehiwot's Claims.**

In addition to the general considerations for declining to hear a case on *forum non conveniens* grounds, another powerful argument against the Court's exercise of jurisdiction over Gebrehiwot's claims resides in the mandatory dispute resolution mechanism contained in the Gebrehiwot franchise agreement truly at issue.  Sabahi Decl. at ¶¶20, 21.  The Court should defer to the parties' agreement opting for alternative dispute resolution rather than accepting jurisdiction itself.

A further relevant consideration is whether Gebrehiwot could prosecute her claims adequately elsewhere -- here, in San Diego -- if she is not permitted to pursue them in this Court. She can indeed.  In addition to more ready access to witnesses, documents and other parties, she has access to the AAA mediation and arbitration process.  The arbitration clause in the franchise agreement provides for a number of alternative mechanisms for resolving the dispute, including options that would reduce or eliminate any expense associated with the claim resolution process. *See* Exhibit 1 to Sabahi Decl.

These considerations clearly meet the threshold for the Court, in its discretion, to deny Sola's motion for leave to amend on the ground of *forum non conveniens* as there is "an alternative forum [that] has jurisdiction to hear [the] case, and . . .  trial in the chosen forum would establish . . .  oppressiveness and vexation to a defendant . . .  out of all proportion to plaintiffs convenience."   *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981), in turn quoting *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 1067 (1947)).  For these reasons, the Court should deny the motion for leave to amend on the basis of *forum non conveniens*.

## III.    CONCLUSION

Defendant CNUSA, respectfully submits that the motion by Plaintiff Sifredo Sola for leave to file an amended complaint adding Luam Gebrehiwot as a party plaintiff and include her claims, and those a putative class of California franchisees, should be denied.

A/75140423.2

Respectfully submitted,
CLEANNET USA, INC.,

By Its Attorneys,


*/s/ Jenny K. Cooper*
Louis A. Rodriques, BBO #424720
louis.rodriques@bingham.com
Jenny K. Cooper, BBO #646860
jenny.cooper@bingham.com
Carolyn B. French, BBO #672923
carolyn.french@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, Massachusetts  02110-1726
617-951-8000

Dated: September 5, 2012

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 5, 2012.


*/s/ Jenny K. Cooper*

Jenny K. Cooper

A/75140423.2