UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIFREDO SOLA, and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CLEANNET USA, INC.<br><br>       Defendant. | Civil Action No. 12-10580-JLT<br>LEAVE TO FILE GRANTED<br>ON OCTOBER 4, 2012 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

  In its twenty-page opposition to Plaintiffs' straightforward motion to amend the complaint to add California claims based on identical factual allegations to those already contained in the complaint, Defendant CleanNet USA, Inc. attempts to litigate this case on the merits; it does so by stating, as though it were fact, a number of the arguments that it intends to raise in its defense against these claims. However, these arguments are not properly addressed on a motion to amend. The Court should allow the amendment and the parties may then raise whatever merits-based legal arguments they deem appropriate.

  Moreover, there is nothing uncommon whatsoever about having claims arising under the laws of different states contained in one complaint; because of the common factual setting, it is more efficient for these claims to be litigated together, rather than in separate court proceedings across the country. Indeed, in other similar cases Plaintiffs' counsel have brought against so-called "cleaning franchise" companies, which are pending in this district, Plaintiffs have brought these claims arising under the laws of

1

different states, and with named plaintiffs from a variety of states.[1] Plaintiffs are the master of their complaint, and there is no reason they should not be permitted to pursue these claims in a single judicial forum as well in this case, where there is no legal bar to them doing so and where they believe that doing so will lead to greater efficiency.

CleanNet USA's principal merits-based argument that it raises in opposition to Plaintiffs' motion is that it contends that it has absolutely no relationship with the cleaning workers whose claims are the subject of this lawsuit. Its legal defense in this case is premised on its argument that intermediary companies with which CleanNet USA contracts in Massachusetts and California (and elsewhere) are the proper entities to be sued and that they (because they have written contracts with the workers) would be the ones responsible for any legal violations. However, Plaintiffs dispute CleanNet USA's contention. Plaintiffs allege that, in light of the manner of CleanNet USA's operations in both Massachusetts and California, CleanNet USA is itself liable for the legal violations suffered by CleanNet janitorial workers in both states and that the use of these "intermediary" companies does not shield CleanNet USA from liability. Indeed, as set forth below and alleged in the complaint, CleanNet USA is responsible for establishing the "franchise" system pursuant to which these workers are required to pay thousands of dollars for the right to perform low-wage janitorial cleaning work and have numerous deductions taken from their pay on a monthly basis; CleanNet USA requires the workers to hold themselves out as CleanNet workers; and CleanNet USA has

---

[1] In <u>Awuah et al. v. Coverall North America, Inc.</u>, D. Mass. C.A. No. 07-10287-WGY, Plaintiffs brought similar claims to those raised in this case under the laws of, and with named plaintiffs from, Massachusetts, Florida, New Jersey, Pennsylvania, etc. (<u>see</u> Docket No. 79, Third Amended Complaint). In <u>Depianti v. Jan-Pro Franchising International, Inc.</u>, D. Mass. C.A. No. 08-10663-MLW, Plaintiffs have brought these claims under the laws of Massachusetts, California, Pennsylvania, New Mexico, Texas, and Florida (<u>see</u> Docket No. 29, Amended Complaint).

ultimate control over all aspects of the cleaning workers' relationship with the cleaning clients and CleanNet USA's intermediary companies and over the workers' wages. As such, it is CleanNet USA that has created and operated this unlawful system in Massachusetts and California, and Plaintiffs' added claims regarding CleanNet USA's operations in California may properly be pursued as part of this litigation.

In other cases brought against competitors of CleanNet, which use the same alleged "franchise" model, the courts have granted summary judgment to the plaintiffs, holding that these workers have been misclassified as independent contractors and have thereby suffered violations of the wage laws. Notably, courts in Massachusetts have repeatedly held that cleaning franchise structures such as CleanNet's violate the Massachusetts wage laws. For example, in Awuah et al. v. Coverall North America, Inc., 707 F. Supp. 2d 80 (D. Mass. 2010), Judge Young granted summary judgment to the plaintiff cleaning workers, holding that they had been misclassified as independent contractors.[2] See also Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance, 447 Mass. 852 (2006) (holding that Coverall cleaning worker was employee, entitled to unemployment assistance upon the loss of her job). Similarly, Judge Wolf ruled in De Giovanni et al. v. Jani-King International, Inc. et al., D. Mass. Civil Action No. 07-10066-MLW, that another "cleaning franchise" company likewise misclassified its workers as independent contractors, granting summary judgment to the plaintiffs. See Transcript of Summary Judgment Order (attached here as Exhibit 1). In Jani-King, as here, the defendant Jani-King International, Inc. argued that it had no

---

[2] On a certified question to the Massachusetts Supreme Judicial Court (SJC), the SJC then ruled that the workers could recover as damages the payments they had made as alleged "franchise fees" and fees they paid for "additional business", as well as deductions taken from their pay, such as for insurance. Awuah et al. v. Coverall North America, Inc., 460 Mass. 484 (2011).

direct relationship with the workers and thus could not be held liable for independent contractor misclassification and comcomitant wage violations; it argued that only Jani-King of Boston contracted directly with the workers and could be held liable. Judge Wolf rejected that argument and granted summary judgment against both entities. Likewise, in <u>Depianti v. Jan-Pro Franchising International, Inc.</u>, D. Mass. C.A. No. 08-10663-MLW, Judge Wolf has addressed another such case in which the national defendant contends (as does CleanNet USA here) that it is not the entity that has a direct relationship with the workers and thus cannot be liable for independent contractor misclassification. Judge Wolf has recently certified that case to the SJC to address this issue.

In any event, it is clear that CleanNet USA's contention that it had no relationship with the workers and cannot be liable for misclassification and wage violations cannot be accepted on its face as confirmed fact. In the <u>Jani-King</u> case, Judge Wolf has rejected such an argument, and in the <u>Jan-Pro</u> case, Judge Wolf has deemed this issue to be one requiring further legal analysis, in that case by the SJC. In this case as well, the parties will certainly argue about whether CleanNet USA can be liable for the violations alleged here, but CleanNet USA cannot use its mere assertion that it has no relationship with the workers and should not be held liable as a basis for preventing these claims to be alleged, and added to a complaint where virtually identical claims against it are already pending.[3]

At most, the issues raised by CleanNet USA—about whether it can be held liable

---

[3] Plaintiffs recognize, of course, that California law will apply to the California claims raised here. As noted in Plaintiffs' motion, the same issues being litigated here in Massachusetts involving independent contractor misclassification and wage law violations in Coverall, Jani-King, and Jan-Pro are also being litigated under California law. See Plaintiffs' Motion to Amend, at 7-8. This Court is fully able to apply California law to the California claims alleged here.

for the violations in the complaint—are merits-based issues that will be resolved on summary judgment or at trial. They are not a basis to deny Plaintiffs' motion to amend the complaint. As discussed in Plaintiffs' motion, the amendment to add the California claims is in the interest of efficiency and judicial economy, as it will allow consolidated discovery and one arbiter deciding the overlapping issues in the case. Courts routinely allow multistate claims to proceed in one case in this manner, and here Plaintiffs have only raised claims under the laws of two states. There is no reason for the Court not to allow these claims to proceed together here. Accordingly, this Court should grant Plaintiffs' motion for leave to file the second amended complaint and allow the case to proceed to discovery.

## ARGUMENT

**I.   PLAINTIFFS ALLEGE THAT CLEANNET USA IS RESPONSIBLE FOR THE LEGAL VIOLATIONS ALLEGED IN THE SECOND AMENDED COMPLAINT.**

Throughout its opposition to Plaintiffs' motion for leave to file the second amended complaint, CleanNet USA claims that it has no relationship with the Plaintiff cleaning workers in this case and can have no responsibility for any legal violations they may have suffered. In fact, Plaintiffs allege (and expect that the evidence will bear out) that CleanNet USA is the party responsible for the legal violations alleged in the proposed Second Amended Complaint. Specifically, CleanNet USA has established a system whereby workers are required to pay thousands of dollars for the right to perform low-paid janitorial work and have numerous deductions taken out of their monthly paychecks. CleanNet USA sets the amounts owed by the workers and the amounts and categories of monthly deductions from their pay. CleanNet USA requires the workers to hold themselves out as CleanNet cleaners. See, e.g., 2d Am. Compl. ¶¶

9-12.

CleanNet USA utilizes intermediary companies, which it requires to do business under the name "CleanNet of _____," in operating its national system. CleanNet USA enters into standard-form agreements with these entities, such as the one it entered into with LP&D, Inc. (d/b/a/ CleanNet of New England), which is attached as Exhibit 2.  In that agreement, CleanNet USA explains that it "has developed and owns a system (the 'System') for the establishment, development and operation of CLEANNET commercial cleaning businesses ('Franchised Businesses') specializing in janitorial services and building maintenance and related services" and authorizes LP&D "to solicit and service CLEANNET franchisees within the designated area described below, in accordance with the terms of this Agreement."  Exhibit 2 at 1.  The agreement requires LP&D to attend CleanNet USA's "qualification and training programs" and states that LP&D's "operation and management of its Area Business must be in full compliance with the System."  Id. at 4.  The agreement also specifies that CleanNet USA will "provide Area Operator with guidelines and specifications for the operation and management of the Area Business, which guidelines and specifications Area Operator must adopt."  Id.  The Agreement requires the local agents/affiliates to use only CleanNet USA's franchise agreement with its cleaning workers and specifies that the local agents/affiliates "will have no authority to make any changes, additions or deletions of any kind to the form of CLEANNET franchise agreement. . ."  Id., ¶ 5.8

CleanNet USA agrees to provide the following services:

- Confidential operations manuals and all other necessary documents, ¶¶ 3.1(c), (e), 3.2(c), (d);

- Initial and ongoing training, ¶¶ 3.1(d), 3.2(f);

- Advisory assistance, ¶ 3.2(b);

- Quality control inspections, ¶¶ 3.2(e), 5.21;

- Negotiation of rates from cleaning supply companies, ¶ 3.2(h).

CleanNet USA establishes minimum sales performance requirements for its local agents/affiliates, Exhibit 2, ¶ 5.5, and receives monthly payments from them based in part on the amount of money collected from cleaning workers. Exhibit 2, ¶¶ 4.2-4.9. Specifically, CleanNet USA receives initial fees from its local agents/affiliates and also receives monthly royalty fees of at least 5% of all gross cash revenues, including monthly billings from janitorial customers and all payments made by cleaning workers. Exhibit 2, ¶¶ 4.2-4.9.

The franchise agreements between the workers and the local agents/affiliates also make clear that CleanNet USA has established the entire system under which the cleaning workers operate. See, e.g., Exhibit 3 at FA1 (excerpt from Sola franchise agreement) (explaining that relationship with worker is established under CleanNet USA's "System and Proprietary Marks"); Exhibit 4 at FA1 (excerpt from Gebrehiwot franchise agreement).

Moreover, on CleanNet USA's own website, it holds itself out as providing cleaning services all over the country, including in Massachusetts and California, and represents the work of the cleaning workers as its *own*. CleanNet USA does *not* hold itself out to the public on its website as being a "franchisor" of a network of master franchises. Indeed, Plaintiffs contend, this assertion is just an attempt by CleanNet USA to shield itself from rampant wage violations, including in Massachusetts and

California.  CleanNet USA describes itself as follows:  "CleanNet USA is a national team of trained cleaning professionals. . .  All CleanNet USA personnel have an enthusiastic, do-it-right attitude every day at every location. . ."  Exhibit 5.  CleanNet USA lists the offices of its local agents/affiliates as its own locations.  For example, with respect to the California office out of which proposed named plaintiff Luam Gebrehiwot worked, CleanNet USA's website states:  "Locate a CleanNet USA Near You . . . CleanNet of San Diego. . ."  Exhibit 6.  It then lists the manager of that local agent/affiliate with an email address "@cleannetusa.com."  Id.  Nowhere on its website does CleanNet USA refer to CleanNet of San Diego as "Paqnet" or to CleanNet of New England as "LP&D."

Though CleanNet USA asserts that it has no relationship with the cleaning workers and that its agents/affiliates are the entities that would be responsible for any legal violations, Plaintiffs allege otherwise, and the exhibits discussed above provide further confirmation of CleanNet USA's involvement in and responsibility for the legal violations alleged in this case.  Accordingly, this Court should grant Plaintiffs' motion to amend the complaint and allow discovery to proceed in this matter.

Notably, as mentioned above, another judge in this district faced with a similar issue has denied a defendant's motion to dismiss a case on the very basis asserted by CleanNet USA here.  In Depianti v. Jan-Pro Franchising International, Inc., the defendant international cleaning franchise company argued that it could not be held responsible for the violations alleged because, as here, intermediary companies contracted directly with the workers.  Like CleanNet USA, Jan-Pro called these intermediary companies "master" franchisors, and it was these "master" franchisors which contracted directly with the cleaning workers.  Jan-Pro moved to dismiss

Plaintiffs' complaint, arguing that the master franchisors, not Jan-Pro itself, would be liable for the legal violations. The Honorable Mark L. Wolf denied Jan-Pro's motion. See D. Mass. Civil Action No. 08-10663-MLW, Docket No. 27. After discovery, Jan-Pro moved for summary judgment, again arguing that it had no relationship with the cleaning workers because of this intermediary "master" franchisor. Having determined that the Massachusetts Supreme Judicial Court had not yet addressed the issues before it, Judge Wolf certified certain questions to the Massachusetts SJC in the Jan-Pro case, including "[w]hether a defendant may be liable for employee misclassification under Mass. Gen. Laws ch. 149, § 148B, where there was no contract for service between the plaintiff and defendant." D. Mass. Civil Action No. 08-10663-MLW, Docket No. 152 at 7, attached as Exhibit 7. These issues are set to be briefed before the SJC in the Jan-Pro case this fall.

    Also, as noted earlier as well, Judge Wolf has also recently granted summary judgment to plaintiff cleaning workers in a certified class action against both Jani-King International, Inc. and its local affiliate, Jani-King of Boston, Inc., despite Jani-King International's vociferous arguments that it had no direct relationship with the workers either, and thus should not be liable for the violations in Massachusetts. De Giovanni et al. v. Jani-King International, Inc. et al., D. Mass. Civil Action No. 07-10066-MLW, transcript of June 6, 2012, hearing, Exhibit 1, at 87-88 (noting that Jani-King International "is the architect of the Jani-King franchising system").

    These same questions are present in this case, and it is premature for the Court to decide, on a motion to amend, whether CleanNet USA can be held liable for the violations alleged here. Such a decision will require a developed evidentiary record,

9

and a decision to be made on summary judgment or at trial.  The Court simply cannot dismiss Plaintiffs' allegations that CleanNet USA is the responsible party here by denying Plaintiffs' motion to amend.  CleanNet's merits-based arguments should await the merits of this case, and the Court should allow Plaintiffs' motion.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER CLEANNET USA.

CleanNet is attempting to use Plaintiffs' proposed addition of claims by California cleaning workers as a basis for distancing itself from its role in the legal violations as to the Massachusetts cleaning workers.  As CleanNet observes in its opposition, M.G.L. c. 223A, § 3 governs personal jurisdiction in Massachusetts.  That statute provides:

> A court may exercise personal jurisdiction over a person,[4] ***who acts directly or by an agent***, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> (b) contracting to supply services or things in this commonwealth;
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
> . . .
>
> (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting;
> . . .

M.G.L. c. 223A, § 3 (emphasis added).  In deciding whether a complaint suffices to establish personal jurisdiction, the court "must accept the plaintiff's (properly

---

[4] M.G.L. c. 223A, § 1 defines "person" as including "a corporation, partnership, association or any other legal or commercial entity, whether or not a citizen or domiciliary of this commonwealth and whether or not organized under the laws of this commonwealth."

documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

Significantly, "[f]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). In Daynard, the First Circuit held that there was personal jurisdiction where the plaintiff had alleged "that the defendants were in a joint venture, or at least held themselves out to be in a type of agency relationship." Id. at 55. The court also held that its conclusion was "consistent with the Due Process Clause." Id. at 57.

Here, as in Daynard, Plaintiffs have alleged that CleanNet USA has acted in Massachusetts through its agents and that those actions have caused harm to the plaintiffs. See, e.g., 2d Am. Compl. ¶¶ 10, 15, 17-18, 20, 23-25. Moreover, as demonstrated by the evidence set forth above and attached hereto, there can be no question that CleanNet USA holds itself out as being in a joint venture with CleanNet of New England. Accordingly, this Court has specific personal jurisdiction over CleanNet USA pursuant to M.G.L. c. 223A, § 3.

Because this Court has personal jurisdiction over CleanNet USA through the claims relating to its activities in Massachusetts, there is no reason that this Court could not preside over Plaintiffs' identical claims against CleanNet USA in connection with its actions in California. *Inter alia*, the claims relate in the following ways: they challenge CleanNet USA's national system, which operates the same way in every state, whereby workers are charged thousands of dollars for the right to perform cleaning work and

11

have numerous deductions taken from their wages; they assert that CleanNet USA's system misclassifies the workers as independent contractors, despite CleanNet USA's extensive control over the workers and its involvement in retaining and distributing the money paid by the clients for the workers' cleaning services; and they raise the issue of CleanNet USA's liability for these violations, to the extent that the violations are effected through the actions of CleanNet USA's local agents/affiliates in each state.

Counsel for Plaintiffs here have also brought similar multistate claims against cleaning franchise companies in the District of Massachusetts.  The Jan-Pro case, discussed in Section I, supra, involves claims on behalf of Jan-Pro cleaning workers nationally and includes named plaintiffs from Massachusetts, California, Pennsylvania, New Mexico, Texas, and Florida.  See D. Mass. Civil Action No. 08-10663-MLW, Docket No. 29 (Amended Complaint).  Similarly, cleaning workers have brought state law claims against another cleaning franchise company, Coverall North America, Inc., in the District of Massachusetts, with named plaintiffs from Massachusetts, Florida, New Jersey, and Pennsylvania.  Awuah et al. v. Coverall North America, Inc., D. Mass. Civil Action No. 07-10287-WGY, Docket No. 79 (3rd Amended Complaint).  Both of those cases have been managed efficiently in this District through discovery and dispositive motion briefing.

It is well settled that plaintiffs are masters of their own complaints.  See, e.g., Britell v. U.S., 318 F.3d 70, 75 n.3 (1st Cir. 2003).  Here, Plaintiffs have chosen to bring their Massachusetts and California claims in the same case to streamline the litigation and in the interest of judicial economy.  The Court should grant Plaintiffs' motion to amend to add the California claims.

### III. PAQNET IS NOT AN INDISPENSABLE PARTY AND NEED NOT BE JOINED IN THIS CASE.

CleanNet USA's argument that its agent in California (which is called "CleanNet of San Diego" on CleanNet USA's website but it refers to as "Paqnet" in its brief) is an indispensable party is similarly premised on its argument that CleanNet USA itself is not involved in the violations alleged in this case.  However, as alleged in the complaint and set out further above, Plaintiffs assert that CleanNet USA established the system through with the violations occurred and has held itself out as being in a joint venture or agency relationship with the affiliated companies that carry out its franchise system (including Paqnet).

At most, Paqnet might be jointly and severally liable with CleanNet USA for some of the California cleaning workers.  Cf. 29 C.F.R. § 791.2 ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]. . ."; Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 2007) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.").  However, there is no reason that Paqnet could be held jointly and severally liable would necessitate its joinder in this case.  There are several reasons that a worker might name only one employer, including where, as here, the named defendant is the one that has established the unlawful employment structure and where, as here, the named defendant is the larger company, more likely to have the resources to pay a judgment.

In other similar cases, courts have allowed claims to go forward against one entity without joining the other.  In the Jan-Pro case, for example, Plaintiffs named the

13

national company as a defendant but not the local agent/affiliate.  As discussed above, Jan-Pro sought dismissal of the complaint on that basis, and Judge Wolf denied the motion.  Similarly, in this case, CleanNet USA has not sought joinder of LP&D, the Massachusetts CleanNet agent/affiliate

      Holding that Paqnet is not an indispensable party is consistent with the factors set forth in Federal Rule of Civil Procedure 19(b) as well.  First, "a judgment rendered in [Paqnet's] absence" would not prejudice either Paqnet or the parties to this litigation. Plaintiffs pursue recovery against CleanNet USA alone, which does not harm Paqnet, nor does it harm CleanNet USA because it would be liable for the total amount of any recovery regardless of whether Paqnet was named as a defendant.  To the extent that CleanNet USA believes it may have a claim for contribution or indemnification against Paqnet, it is free to take whatever steps it thinks is necessary to pursue such a claim, but it does not prejudice either of them for Paqnet not to be named in this case. Second, as discussed above, "a judgment rendered in [Paqnet's] absence would be adequate," as CleanNet USA is wholly liable for any violation and is an international company more likely to be able to pay a judgment than a small local company such as Paqnet.  The final factor—"whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder"—likely weighs in favor of plaintiffs as well. Requiring Plaintiffs to litigate their identical claims in two separate fora would add unnecessary expenses and would increase the risk of inconsistencies between the two actions.  Moreover, as CleanNet USA points out in its opposition brief, Paqnet's contract with the cleaning workers contains an arbitration provision, so it would not be possible

14

for Plaintiffs to join Paqnet in a court action in any event (even in California).[5]

## IV. MASSACHUSETTS IS A CONVENIENT FORUM FOR THE CLAIMS IN THE PROPOSED SECOND AMENDED COMPLAINT.

CleanNet USA's argument that Massachusetts is not a convenient forum should be rejected as well. What CleanNet fails to acknowledge is that the focus of this case is CleanNet USA's own establishment and implementation of its cleaning franchise system. This evidence is virtually identical for both Massachusetts and California, and much of the discovery with respect to the workers' claims brought under the laws of both states will overlap. It would be needlessly duplicative to require plaintiffs to obtain this same evidence in two different proceedings in courts on either side of the country.

As discussed above, courts in this district have properly allowed other cleaning franchise cases with claims under multiple states' laws to be tried together in Massachusetts, and this Court should follow the same course here. See Depianti v. Jan-Pro Franchising International, Inc., D. Mass. Civil Action No. 08-10663-MLW, Docket No. 29 (Amended Complaint) (named plaintiffs and state-law claims from Massachusetts, California, Pennsylvania, New Mexico, Texas, and Florida); Awuah et al. v. Coverall North America, Inc., D. Mass. Civil Action No. 07-10287-WGY, Docket No. 79 (3rd Amended Complaint) (named plaintiffs and state-law claims from

---

[5] To the extent that CleanNet USA suggests that Paqnet's arbitration clause necessitates that Plaintiffs' California claims against CleanNet USA be brought in arbitration, that argument is unavailing. First, CleanNet USA has consistently denied that it is a party to the contract between the workers and the intermediaries and has not moved to compel arbitration. Plaintiffs have made the strategic decision to pursue their claims against CleanNet USA and not to pursue claims against Paqnet, which is unlikely to have sufficient resources to pay a judgment. Moreover, CleanNet USA could not argue that it is entitled to the benefit of Paqnet's arbitration clause in any event, as it is well settled that arbitration is a matter of consent, and the California workers, including Gebrehiwot, have not agreed to arbitrate their claims with CleanNet USA. See, e.g., EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002) ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'"); Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1773 (2010) (recognizing "the basic precept that arbitration 'is a matter of consent, not coercion'").

Massachusetts, Florida, New Jersey, Pennsylvania, etc.). Similarly, the Honorable William G. Young of this District certified a nationwide class of airline skycaps under the laws of a variety of states in <u>Overka et al. v. American Airlines, Inc.</u>, D. Mass. Civil Action No. 08-10686-WGY, and held that "trying this case as a nationwide liability class is a superior method for adjudication of the controversy." 265 F.R.D. 14, 24 (D. Mass. 2010).

Much of the evidence in this case will be document-based and can be produced in any forum; and the corporate decisions of CleanNet USA regarding the establishment and perpetration of its cleaning franchise system took place not in Massachusetts or California but in Maryland, where CleanNet USA's corporate headquarters are located. Massachusetts is certainly more convenient than California to Maryland, being approximately 2,300 miles closer. As such, the Court should reject CleanNet USA's argument that Massachusetts is not a convenient forum.

## CONCLUSION

This Court is already presiding over the claims of CleanNet cleaning workers in Massachusetts, and the most efficient course is for this Court also to hear the identical claims being pursued by CleanNet cleaning workers in California. As to both claims, the central issue is CleanNet USA's establishment of a cleaning company through which workers pay thousands of dollars for low-wage janitorial jobs, which Plaintiffs allege violates the wage laws and other laws in both Massachusetts and California. CleanNet USA's arguments against amending the complaint are largely merits-based arguments that are best addressed through discovery and post-discovery motion practice. Because Plaintiffs have satisfied Federal Rule of Civil Procedure 15(a)'s liberal standard

for the amendment of complaints, the Court should grant Plaintiffs' motion for leave to file the second amended complaint.

                                    Respectfully Submitted,

                                    SIFREDO SOLA, on behalf of himself and all others similarly situated,

                                    By his attorneys,

                                    /s/ Hillary Schwab
                                    Shannon Liss-Riordan, BBO #640716
                                    Hillary Schwab, BBO #666029
                                    Claret Vargas, BBO#679565
                                    LICHTEN & LISS-RIORDAN, P.C.
                                    100 Cambridge Street –20th Floor
                                    Boston, MA 02114
                                    (617) 994-5800

Dated: October 4, 2012

## CERTIFICATE OF SERVICE

     I hereby certify that on October 4, 2012, a copy of this document was served by electronic filing on all counsel of record.

                                    /s/ Hillary Schwab
                                    Hillary Schwab, Esq.